1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   AIDA CORRAL, individually and on        1:13-cv-0262  AWI SKO
     behalf of all others similarly situated,
12
                 Plaintiff,
13
                                             MEMORANUDM OPINION AND  ORDER
         v.                                  ON DEFENDANTS' MOTION TO
14                                           DISMISS PLAINTIFF'S FIRST AMENDED
     CARTER'S INC., a Deleware               COMPLAINT
15   Corporation; and THE WILLIAM
     CARTER COMPANY, a Massachusetts
16   corporation,
                                             Doc. # 15
17               Defendants.

18

19

20          This is a putative class action in diversity for damages and injunctive relief by plaintiff

21   Aida Corral, individually and as putative class representative ("Plaintiff") against defendants

22   Carter's Inc.[1], and The William Carter Company ("Defendant").  Plaintiff's First Amended

23   Complaint ("FAC") alleges two claims for relief; the first for false or misleading advertising in

24   violation of California's Unfair Business Practices statute,  Business and Professions Code §

25   17200, et seq; and the second for false advertising in violation of California's Consumers Legal

26   Remedies Act, California Civil Code § 1750 et seq.  Currently before the court is Defendant's

27

28   _____
     [1]    Defendant contends Carter's Inc. is not a proper defendant in this action and has no connection to the product at
     issue.  The court will refer to Carter's Inc. and the William Carter Company collectively as "Defendant."

                                                    1

1  motion to dismiss Plaintiff's FAC.  The parties do not dispute that diversity jurisdiction exists

2  pursuant to 28 U.S.C. § 1332.  Venue is proper in this court.

3                    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

4          The original complaint was filed in this court on February 21, 2013.  The currently-

5  operative FAC was filed on March 25, 2013.  At issue in this action is a product or collection of

6  products marketed by Defendant that is collectively referred to as a "crib bumper."  Defendant

7  allegedly makes and markets a number of models of crib bumpers but they appear to be all of a

8  similar physical construction and differ only in their decorative pattern.  Basically a crib bumper

9  is a strip of thin padding that is intended to affix to the inside perimeter of an infant's crib by

10  means of ties or other attachments to the slats that surround the crib.  Crib bumpers are sold either

11  individually or as bedding sets.  Plaintiff alleges that some 200,000 crib bumpers are sold

12  (presumably in the United States) annually, although it is not alleged that Defendant is the only

13  purveyor of crib bumpers.  The gravamen of Plaintiff's claims against defendant is that crib

14  bumpers, used as directed, constitute a significant risk of injury or death to infants and that

15  Defendant has concealed the risk in its marketing of the crib bumpers leading to the false

16  impression that they promote infant safety.

17          Plaintiff alleges that such warning as is provided to buyers of Defendant's crib bumpers

18  consists of two elements.  The first is what appears to be a label which reads: "To prevent

19  entanglement or strangulation, position ties to the outside of crib and be sure they are secure.

20  Remove bumper when child can sit up unaided or can pull to a standing position."  See Doc 13 at

21  6:6-14 (showing photograph of what appears to be a label with quoted warning).  The other

22  allegedly deceptive message consists of an enclosure called a "'naptime to nighttime information

23  sheet' created by the Juvenile Products Manufacturers Association ("JPMA")."  Doc. # 13 at

24  6:18-20.  Plaintiff alleges the JPMA information sheet is similarly misleading because it counsels

25  parents to remove "'pillows, sheepskins, pillow-like stuffed toys and products not intended as

26  infant bedding from the crib when infants are sleeping,' it does not recommend removing the crib

27  bumper when the baby is sleeping."  Id. at 6:20-23.  The JPMA "nap to nighttime sheet contains a

28  number of other advisements, such as avoiding the use of "pillow-type" bumpers, the use of

bumpers with ties that exceed nine inches, and the avoidance of use of bumpers if they cannot be fastened securely as instructed.  Plaintiff alleges that both the JPMA and Carter's advisements deceive consumers by concealing that the crib bumpers "pose serious health risks and even the risk of infant death, while still representing that Carter's Crib Bumpers are safe if properly installed."  Id. at 7:8-11.

The FAC alleges that crib bumpers "became popular in older-style cribs that featured slats far enough apart that a baby's head could become trapped between them, thereby posing a suffocation risk."  Doc. # 13 at 7:13-15.  Although the FAC alleges modern cribs sold in the United States have corrected this design flaw making crib bumpers "superfluous and unneeded," the FAC does not allege when the design changes were instituted or how many "older-style cribs" remain in use.  The FAC also alleges a number of professional and infant health advocacy groups have advised against the use of crib bumpers, as has the United States Food and Drug Administration ("FDA").  These groups include American Academy of Pediatrics, and "numerous organizations" promoting Sudden Infant Death Syndrome ("SIDS") awareness.  The FAC does not make a clearly causal connection between SIDS and the use of crib bumpers.  Rather, Plaintiff cites statements suggesting that rebreathing stale air may be contributory to SIDS in some cases.  Plaintiff 's FAC also cites a 2007 study that attributed 27 accidental deaths of children between 1985 and 2005 to bumper pads.  The causes of death in the study were either suffocation caused by the child becoming wedged against a padded bumper or becoming strangled on the bumper ties.  See generally, Doc. # 13 at ¶¶ 23-29 (detailing recommendations against use of crib bumpers and studies and recommendations related thereto).

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a

3

1  motion to dismiss must accept as true the allegations of the complaint in question, <u>Hospital Bldg.</u>

2  <u>Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740 (1976), and must construe the pleading in the

3  light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's

4  favor, <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the

5  allegations must be factual in nature.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("a plaintiff's obligation to

6  provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

7  a formulaic recitation of the elements of a cause of action will not do").  The pleading standard

8  set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual

9  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

10  accusation."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) ("<u>Iqbal</u>").

11      The Ninth Circuit follows the methodological approach set forth in <u>Iqbal</u> for the

12  assessment of a plaintiff's complaint:

13      "[A] court considering a motion to dismiss can choose to begin by identifying
        pleadings that, because they are no more than conclusions, are not entitled to the
14      assumption of truth.  While legal conclusions can provide the framework of a
        complaint, they must be supported by factual allegations.  When there are well-
15      pleaded factual allegations, a court should assume their veracity and then
        determine whether they plausibly give rise to an entitlement to relief."
16

17  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 970 (9th Cir. 2009) (quoting <u>Iqbal</u>, 129 S.Ct. at 1950).

18      Claims sounding in fraud are subject to heightened pleading requirements of Rule 9(b) of

19  the Federal Rules of Civil Procedure.  Rule 9(b) requires that a claim sounding in fraud "must

20  state with particularity the circumstances constituting fraud."

21                              **DISCUSSION**

22  **I.  Plaintiff's Claim for Violation of California Consumers Legal Remedies Act ("CLRA")**

23      In their opposition to Defendant's motion to dismiss, Plaintiff makes the significant

24  clarification that both claims for relief alleged in the FAC are based on the allegation of

25  "deception by concealment."  Plaintiff asserts that the FAC does not purport to allege any

26  affirmative misrepresentation by Defendant.  While Plaintiff's claim under CRLA is alleged

27  second, the purposes of analytical clarity and brevity are best served if that claim is discussed

28

4

1    first.

2        "The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or

3    practices.' Cal. Civ. Code § 1770.  Plaintiff's FAC relies on subsections (5), (7), (9) and (16) of

4    section 1770(a).  Together, these subsections provide relief where there is a false representation

5    that Defendant's crib bumpers (1) "have approval, characteristics, . . . uses [and] benefits . . .

6    which [they do] not have;" (2) "are of a particular standard, quality or grade . . . if [they are] of

7    another;" and (3) "have been supplied in accordance with previous representations but [they have]

8    not."  Plaintiff also relies on subsection 1770(a)(9) which prohibits the advertising of goods with

9    the intent not to sell the goods as advertised.  See generally, Doc. # 13 at ¶ 66 (setting forth

10   allegedly applicable subsection of section 1770(a) supporting Plaintiff's second claim for relief.)

11       These sections of the CLRA are held to encompass both representations,
         per the explicit text of the statute, as well as omissions.  *Daugherty [v.*
12       *American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835 (2006)]. To be
         actionable, an omission must be "contrary to a representation actually made
13       by the defendant, or an omission of a fact the defendant was obliged to
         disclose."  *Id.*  A fact is material, rendering a defendant potentially
14       obligated to disclose it, if a "reasonable consumer would deem it important
         in determining how to act in the transaction at issue."  *Collins [v.*
15       *Emachines, Inc.*,202 Cal.App.4th 249, 255 (2012).

16   Mui Ho v. Toyota Motor Corp., 2013 WL 1087846 (N.D. Cal. 2013) at *6.  "Nondisclosure or

17   concealment of a material fact that a defendant was obliged to disclose can be actionable in four

18   situations: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the

19   defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

20   defendant actively conceals a material fact from the plaintiff; or (4) with the defendant makes a

21   partial representation but also suppresses some material fact."  Id. at *7 (citing LiMandri v.

22   Judkins, 52 Cal.App.4th 326, 336-337 (1997)).

23       *A.  Existence of A Material "Fact"*

24       As an initial matter, Rule 9(b) of the Federal Rules of Civil Procedure requires that

25   Plaintiff identify with particularity the "fact" that Defendant was obliged to disclose but did not.

26   As Plaintiff correctly notes, a claim of fraud by omission cannot, as a practical matter, require the

27   same degree of adherence to the "who what when and where" standard imposed by Rule 9(b) on

28   claims of affirmative misrepresentation.  Falk v. Gen. Motors Corp., 496 F.Supp.2d 1088, 1098,

1099 (N.D. Cal. 2007).  However, for a claim of fraud by omission to provide adequate notice to the defendant, there must be a fairly precise statement of what was required to have been disclosed that was not.  Although, as noted, the FAC is somewhat inexact on this matter, Plaintiff's opposition to Defendants motion to dismiss makes clear that Defendant was obliged to "disclose the significant risk that their crib bumpers may cause death, entrapment, and/or suffocation."  Doc. # 23 at 10:10-11.  Plaintiff also appears to contend Defendant was obliged to disclose that use of crib bumpers constitutes a significant risk "even if the consumer follows all of the instructions on the label."[2]  Id. at 11:18-20.

Based on the allegations set forth in Plaintiff's FAC, the court feels compelled to consider first whether the allegedly required disclosure is, in fact, a "fact" within the meaning of the CLRA.  Neither party has cited, and the court has not found, case authority that examines the level of proof necessary to establish a "fact" that a defendant may be obliged to disclose.  Plaintiff has alleged increased "risk" as a result of the use of Defendant's crib bumpers.  Generally, "risk" is the product of the severity of an adverse event times the probability the event will happen.  There is no question the accidental death of an infant is an outcome of the most severe kind.  However, to establish the "Fact" that the crib bumpers sold by Defendant pose the *risk* of infant harm, Plaintiff's must allege at least some evidence that the use of *Defendant's* product, as directed, increases the frequency with which the harm will occur.  The FAC cites a single study on the issue which linked crib bumpers as a class of products to 27 accidental deaths directly attributable to the crib bumpers over a 20-year period from 1985 to 2005.  The study, at least as alleged by Plaintiff, does not specify the type of crib bumpers in question – whether pillow type or of the same or different design as Defendant's – or to what extent the fatalities noted could be attributed to faulty installation of the product or the extent to which a product failure contributed to the accidental injury or death.  In short, no studies cited in Plaintiff's FAC link the use of *Defendant's* product according to the instructions provided with increase in the frequency of infant death.

---

[2]    For purposes of this discussion the court will refer to both statements – that the crib bumpers pose a significant risk of infant injury or death and that the crib bumpers pose a significant risk even if installed according to directions -- as the alleged "Fact."

Plaintiff's FAC alleges that a number of professional and infant safety advocacy groups have recommended against the use of bumper pads in cribs.  However, the recommendations of these groups against the use of bumper pads does not constitute proof of the Fact that the use of Plaintiff's product as directed will substantially increase the risk of infant death.  Rather, the recommendations appear to be the result of a number of considerations that may include the non-zero risk of injury, the lack of any verifiable benefit from the use of crib bumpers and the possibility the product will be installed or used improperly leading to injury.

As noted above, Plaintiff's claims under both CLRA and Business and Professions Code § 17200 sound in fraud and must meet the pleading standards of Rule 9(b).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and *why it is false*." United States ex rel . Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir.2011) (italics added).  Cast in the context of fraud by omission, application of the same rule requires that the complaint adequately allege why the *omitted* fact is true, as well as being material to consumer decision-making.  The court agrees with Defendant's characterization of Plaintiff's complaint as "overreaching."   Plaintiff's FAC seeks, among other things, to force Defendant to affirmatively warn prospective purchasers of crib bumpers, or infant bedding sets that contain crib bumpers, that the use of *Defendant's product* "pose[s] serious health risks and even the risk of infant death."  Doc. #13 at 7:9-10.  The evidence alleged by Plaintiff's FAC – the cited study and the recommendations of the various professional and advocacy organizations – may be sufficient to establish a number of "facts" within the meaning of the CLRA; but the Fact espoused by Plaintiff is not among them for the reasons outlined above.

The court must conclude the study and recommendations cited by Plaintiff, at least as set forth in the FAC, do not suffice to establish the "Fact" that Plaintiff contends Defendant was required to disclose.  The court agrees with Defendant's observation that there is no evidence alleged by Plaintiff that connects any crib bumper made by Defendant to harm to any infant.  See Doc. # 15-1 at 2:15-20 (noting lack of evidence tying Defendant's product to any harm).  The fact that several advocacy groups recommend the non-use of crib bumpers is not evidence that

Defendant's crib bumpers, if properly installed, are inherently dangerous because there are other apparent considerations behind the cited recommendations. If Plaintiff wishes to enlist the court's authority to force Defendant to affirmatively warn consumers of a significant risk of harm to infants from the use of its product, Plaintiff will be required to draw a more direct line between actual harm to infants and *Defendant's* product.

Because Plaintiff has failed to allege evidence sufficient to establish the existence of the Fact that Defendant is accused of concealing, Plaintiff's claim for violation of CLRA fails. The court is not inclined at this time to extend this analysis further to determine whether Defendant would have been liable for concealment under CLRA if Plaintiff had alleged additional evidence to support the asserted Fact or if Plaintiff had asserted a different fact that is supported by the evidence that was alleged. Rather, the court will avoid any speculation by granting leave for further amendment of the FAC. Because Plaintiff has failed to state a claim under the CLRA, the claim for violation of California Business Code § 17200 also fails. See Kowalsky v. Hewlett-Packard Co. 2011 WL 3502715 (N.D. Cal. Aug. 10, 2011) at *6 (noting that claims under the fraud prong of the UCL and under the CLRA have the same elements and are often analyzed together). Because Plaintiff's FAC will be dismissed in its entirety, Defendant's motion to strike the class claims alleged in the FAC are moot.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that:

1. Defendant's Motion to Dismiss Plaintiff's FAC is hereby GRANTED. The FAC is hereby DISMISSED without prejudice in its entirety.

2. Leave to further amend the complaint is hereby GRANTED. Any further amended complaint shall be filed and served not later that twenty-one (21) days from the date of service of this order.

3. Defendant's motion to strike portions of the FAC are hereby DENIED as moot.

IT IS SO ORDERED.

Dated:   January 16, 2014   _____

SENIOR  DISTRICT  JUDGE

8